UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| PERRY BONIN, ACE CHANDLER and MICHAEL MANUEL, ET AL | : : : | CIVIL ACTION NO. "JURY" |
| VERSUS | : : | JUDGE: |
| SABINE RIVER AUTHORITY OF TEXAS and SABINE RIVER AUTHORITY OF LOUISIANA | : : : | MAGISTRATE: |

## NOTICE OF REMOVAL

**TO:   THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS**
United States District Court
300 Willow Street, Suite 104
Beaumont, Texas 77701

Defendant, Sabine River Authority of Texas ("SRA-T"), by and through undersigned counsel, hereby gives notice of the removal of this action from the 163rd Judicial District Court of Orange County, Texas to the United States District Court for the Eastern District of Texas. In support of the Notice of Removal, Defendant states as follows:

1. This action was originally commenced by Plaintiffs on April 20, 2016 through the filing of a Petition in the 163rd Judicial District Court in Orange County, Texas, captioned "*Perry Bonin, Ace Chandler and Michael Manuel, et al vs. Sabine River*

#1284309

*Authority of Texas and Sabine River Authority of Louisiana*" and assigned Case No. B160137-C.

2. SRA-T was served with Plaintiffs' Original Petition on April 28, 2016.

3. Service on the Sabine River Authority, State of Louisiana ("SRA-L"), an agency of the State of Louisiana, has not been properly effected because Plaintiffs purportedly served an SRA-L board member who is not authorized to accept service. *See* La. R.S. 38:2324 which provides that "All legal process shall be served upon the chairman of the board of commissioners."

4. Nevertheless, SRA-L's consent to this removal is not required because SRA-L is not subject to the jurisdiction of this court inasmuch as La. R.S. 13:5106A provides that no case against the State of Louisiana, its agencies or political subdivisions, "shall be instituted in any court other than a Louisiana state court." Under comity principles, Texas courts recognize and give effect to Louisiana's venue limiting statute, La. R.S. 13:5106A. *See, e.g., Hawsey v. Louisiana Dept. of Social Services*, 934 S.W.2d 723, 726 (Tex. App. – Houston [1st Dist.] 1996, writ denied); and *Cason v. E.I. Dupont de Nemours & Co.*, No. 01-94-01191-CV, 1997 WL 69858 (Tex. App. – Houston [1st Dist.] 1997, pet. denied) (not designated for publication). As courts in Texas are without jurisdiction over SRA-L, it should be treated as an improperly joined party whose consent is not required. *See Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 815 (5th Cir. 1993) (where fraudulent or

improper joinder is applicable, an allegedly improperly joined defendant need not join in or consent to removal).

5. The United States District Court for the Eastern District of Texas is the court embracing the place wherein such action was pending in state court.

6. This removal is effected and has been timely filed within thirty (30) days of the removing defendant being served with process.

7. This Court has jurisdiction over this matter under 28 U.S.C. §1331, and it is properly removed to this Court based on federal question jurisdiction. Specifically, jurisdiction under 28 U.S.C. § 1331 exists because Plaintiffs' claims require the interpretation of federal law including, but not limited to Chapter 16 of the United States Code.[1] "Federal question" jurisdiction also exists because Plaintiffs' action concerns the duties and liabilities created by orders, rules and regulations of the Federal Energy Regulatory Commission ("FERC") required and undertaken consistent with 16 U.S.C. § 791, *et seq.* (the "Federal Power Act" or "FPA") and resulting federal regulation of the Toledo Bend Reservoir and Sabine River.

---

[1] 16 U.S.C 825p specifically provides for federal district court jurisdiction "brought to enforce any liability or duty created by, or to enjoin any violation of this chapter or any rule, regulation, or order" under Chapter 16 U.S.C., which includes the Federal Power Act.

#1284309

-3-

## **GROUNDS FOR REMOVAL**

*Removal is proper under 28 U.S.C. §§ 1331 and 1441(a) because the Petition alleges claims that "arise under" federal law.*

8. A district court may exercise original federal jurisdiction over any civil action "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Under Section 1331, federal jurisdiction is present when a plaintiff's well-pleaded complaint demonstrates either (a) federal law creates the cause of action; or (b), as is the case here, the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law. *See Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63-67, 107 S.Ct. 1542 (1987).

9. For federal jurisdictional purposes, this Court may not take Plaintiffs' allegations at face value. Rather, the Court must instead undertake a careful examination of the facts, theories, and law giving rise to and governing Plaintiffs' claims. *See, e.g., Uncle Ben's Int'l Div. of Uncle Ben's, Inc. v. Hapag-Lloyd Aktiengesellschaft,* 855 F.2d 215, 216-18 (5th Cir. 1988).

10. Plaintiffs filed suit against SRA-T and SRA-L following an unprecedented rainstorm event that occurred during the first full week of March 2016, during which more than two feet of rain fell in a very short time. As alleged by Plaintiffs, Defendants "caused … a deliberate release of water from the Toledo Bend spillway gates into the Sabine River" by opening "nine spillway gates … to a measure of twenty-two feet each."

(Amended Petition at pp. 1-2). Claiming such action constitutes a "taking" under Texas and Louisiana law, Plaintiffs seek monetary damages against SRA-T and SRA-L under their respective State's constitution.

11.     Plaintiffs' state law cause of action gives rise to federal question jurisdiction on three fronts, any one of which permits this removal. First, Plaintiffs' claims 1) necessarily raise a serious federal issue; 2) that is both actually disputed and is substantial; and 3) this court may entertain the federal claim without disturbing any congressionally approved balance of federal and state responsibilities. *C.f., Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 313-14, 125 S.Ct. 2363, 2367, 162 L.Ed.2d 257 (2005). Second, federal question jurisdiction exists because Plaintiffs' claims require the interpretation and application of federal common law, as their claims for damages concern the duties and liabilities created by orders, rules and regulations of FERC required and undertaken consistent with the FPA and resulting federal regulation of the Toledo Bend Reservoir and Sabine River. Lastly, 28 U.S.C. § 1337 provides for federal jurisdiction because Plaintiffs' claims arise "under an[] Act of Congress regulating commerce," including 16 U.S.C. § 791, *et seq.*

12.     The Toledo Bend spillway is part of the federally licensed "Toledo Bend Project" ("Project"), which includes the Toledo Bend Reservoir (approximately 65 miles long with a surface area of over 180,000 acres), the dam which runs across the Texas and Louisiana state lines, a spillway located in Sabine Parish, Louisiana, more than a dozen recreational

areas located in Louisiana and Texas, a hydroelectric plant located in the State of Texas, a transmission line, and all other structures, fixtures, equipment and facilities used in power generation and the operation and maintenance of the Project.

13. FERC is established and discharges federal statutory responsibilities under the FPA, 16 USC §§ 791a *et seq.*, an Act the United States Supreme Court has found demonstrates congressional intent for "a broad federal role in the development and licensing of hydroelectric power." *California v. FERC,* 495 U.S. 490, 496, 110 S.Ct. 2024, 2028, 109 L.Ed.2d 474 (1990). Under the FPA, FERC is required and authorized to "issue licenses ... for the purpose of constructing, operating and maintaining dams, water conduits, reservoirs, ... or other project works necessary or convenient for the ... development, transmission and utilization of power ... in any of the streams or other bodies of water over which Congress has jurisdiction." 16 USC § 797(e). Because the Toledo Bend Project is located on the Sabine River, which is a navigable waterway of the United States, and because it occupies several thousands of acres of National Forest, the Project exists and operates only based upon and in accordance with its FERC license. 16 USC § 817.

14. In 1962, the SRA-T and the SRA-L applied to FERC for a license to construct and operate the Project. On October 14, 1963, FERC's predecessor agency, the Federal Power Commission, issued a 50-year license ["Order Issuing License (Major)"] jointly to SRA-L and SRA-T for the construction, operation and maintenance of the Project, which

is designated on the records of the Commission as Project No. 2305. *Sabine River Auth. of Tex. & Sabine River Auth. of La.*, 30 F.P.C. 1009 (1963). As mandated by FERC, the primary purpose of the Project is power generation and water conservation; it was not built for flood-control purposes.

15. SRA-T and SRA-L submitted a new application on September 30, 2011, and an Order issuing a new 50-year license was issued by FERC on August 29, 2014. As expressly stated therein, the license "is subject to the terms and conditions of the Federal Power Act (FPA), which is incorporated by reference as part of [the] license, and subject to the regulations the Commission [FERC] issues under the provisions of the FPA." *Sabine River Auth. of Texas & Sabine River Auth., State of La.*, 148 FERC ¶ 62,171 (2014) (Ordering Paragraph (A)).

16. The license issued to SRA-T and SRA-L, as joint licensees, regulates all aspects of the planning, construction, operation, and maintenance of the Project. FERC is required by the FPA to impose any condition on the licensees that, "in the judgment of the Commission, is best adapted to a comprehensive plan" to promote power development, protect the environment and enhance other beneficial public uses. 16 U.S.C. § 803(a). As FERC has explained, "the Commission is bound by its statutory obligations under the FPA to promote the greatest public interest possible at each project. **We cannot give the Authorities [SRA-T and SRA-L] the blanket authority they seek to operate the reservoir…. We must establish an operating regime for the reservoir that will give**

**appropriate weight to all public interest considerations."** *Sabine River Auth. of Tex. & Sabine River Auth., State of La.*, 148 FERC ¶ 62,171 (2015) (Paragraph 35) (emphasis added). In other words, all aspects of the operation of the Project, including those of which Plaintiffs complain, are undertaken based upon FERC's mandate.

17. For example, Article 406 of the Project license *requires* SRA-T and SRA-L to "at all times maintain a minimum surface elevation of 162.2 feet above mean sea level (msl)." *Sabine River Auth. of Tex. & Sabine River Auth., State of La.*, 151 FERC ¶ 61,037 (2015) (Ordering Paragraph (E)). During periods of hydropower generation, Article 406 further requires SRA-T and SRA-L to "maintain the reservoir surface elevation between 168 and 172 feet msl," except for several enumerated exceptions. *Id.*

18. Under the authority of the FPA, FERC also regulates all releases from the Project's spillway. During periods of normal Project operations, Article 402 of the license imposes a schedule for continuous releases at the Project spillway, which range from 150 cfs to 300 cfs, depending on the month of the year and the elevation of the reservoir. *Sabine River Auth. of Tex. & Sabine River Auth., State of La.*, 148 FERC ¶ 62,171 (2014) (Ordering Paragraph (F)). During storm events that raise reservoir levels, the FERC-approved *Guide for Spillway Gate Operation for Toledo Bend Reservoir*, as well as a *Supplemental Guide*, establish requirements for opening and closing spillway gates—identifying which gates are to be opened and the amount each gate is to be opened—based on a range of reservoir levels, beginning at elevation 172.5 feet msl. Article 403 of

#1284309 -8-

the Project license directs SRA-T and SRA-L to develop a plan, subject to FERC approval, for meeting the continuous release requirements. *Id*.

19.     FERC's comprehensive regulation of the Project also includes a requirement for the joint licensees to develop, maintain, and implement an emergency action plan ("EAP"), which must be approved and periodically reviewed by FERC. 18 C.F.R. §§ 12.20–12.25.

20.     Finally, FERC's comprehensive regulation of the Project extends to environmental enhancement and mitigation, *e.g.,* Article 404, "Water Quality and Cofferdam Effectiveness Monitoring" and Article 409, "Bald Eagle Protection Measures"; invasive species management, *e.g.,* Article 407, "Report on Chinese Tallow Treatment"; public recreation areas along the Project shoreline and downstream of the Project," *e.g.*, Article 410; "Revised Recreation Management Plan"; management of cultural resources, *e.g.*, Article 412, "Programmatic Agreement and Historic Properties Management Plan"; and public use of the Project's nearly 1,200 miles of shoreline, *e.g.*, Article 411, "Shoreline Management Plan," and Article 415, "Use and Occupancy." *See generally Sabine River Auth. of Tex. & Sabine River Auth., State of La.*, 148 FERC ¶ 62,171 (2014) (Ordering Paragraph (F)).

21.     After licensure, the FPA prohibits alterations to the licensed project that do not conform to the approved plans without FERC's prior approval. 16 U.S.C. § 803(b).

22. Thus, by virtue of the FPA, FERC was and is currently vested with exclusive jurisdiction to license and regulate the Project and all its component facilities, operations and uses, including the height of the reservoir and discharges into the Sabine River. *See, e.g., First Iowa Hydro-Electric Cooperative v. FPC*, 328 U.S. 152, 181, 166 S.Ct. 906, 920, 90 L.ed 1143 (1946) ("[t]he detailed provisions of the Act providing for the federal plan of regulation leave no room or need for conflicting state controls"); and *California v. FERC, supra*, 495 U.S. at 497-98, 110 S.Ct. at 2029 (recognizing the "pre-emptive effect of the FPA" as construed in *First Iowa*).

23. While Plaintiffs purport to allege claims only under the Texas and Louisiana State Constitutions, the careful examination that this Court is mandated to undertake shows that Plaintiffs' claims – by which they seek to impose liability as a result of Defendants' actions in operating the spillway – arise under and require resolution of federal law. This is so because, as detailed above, the license issued and regulated by FERC under the FPA controls every aspect of spillway operations at the Toledo Bend Project, including the conduct of which Plaintiffs complain.

24. Under this plenary authority, FERC has previously observed and held that the Toledo Bend Project is not licensed to serve as a flood control device. This is expressed not only in the license documents, but also, for example, in FERC's prior rejection of a request by downstream residents for changes in the reservoir operation to prevent

flooding.[2] Thus, the assessment of any liability on SRA-T and SRA-L for failure to operate its spillway gates in a manner that prevents downstream flooding, when the FERC-approved operational guidelines and orders mandated a different operational regime, would constitute a material and fundamental change to all aspects of operation and maintenance of this FERC-licensed project, which is within FERC's exclusive control and therefore subject to federal jurisdiction. *See Simmons v. Sabine River Authority Louisiana*, 732 F.3d 469 (5th Cir. 2013). In essence, such claims, if granted, would require SRA-T and SRA-L to operate the Toledo Bend Project as a flood control facility—something that FERC has repeatedly considered and rejected. Under *Grable*, a federal issue is necessarily raised by Plaintiffs' suit because the court must apply federal law to the facts alleged.

### *Plaintiffs' claims arising under federal common law must be adjudicated in federal court.*

25. In addition to the necessary application of the FPA to Plaintiffs' claims, federal common law governs the interpretation of governmental contracts and provides an

---

[2] "[FERC's] evaluation of the operation of the Toledo Bend Dam during flood flow events determined that the severity of the flooding is dependent upon many factors, including the duration of the storm, amount of rainfall, the path of the storm, and the saturation level of the basin during the flood event. Although the Toledo Bend Dam was not designed as a flood control dam, review of historical flood flow data indicates that the construction and operation of the dam has not increased the incidence of downstream flooding. In fact, in some flood events the dam has been beneficial by delaying the flood flows by temporarily storing a portion of the flood inflow in the reservoir. However, the ability of the project to pre-release flow to obtain significant reservoir storage in anticipation of high inflows is severely limited by the downstream development, particularly Deweyville, Texas. Therefore, to obtain greater flood control benefits, operation of the project would need to be changed by permanently lowering the project reservoir level to provide flood control storage. Significantly lowering the reservoir to the extent necessary to provide appreciable flood control benefits would adversely impact the established reservoir recreation activities and power development." See correspondence from J. Mark Robinson, Director, Office of Energy Projects, FERC, dated December 30, 2002, attached hereto as Exhibit 1 and incorporated by this reference for all purpose.

additional ground for removal under § 1331. More particularly, Plaintiffs complain of the SRAs' conduct that was the direct result of a federal regulation and agreement between the SRAs and FERC, and the interpretation of all contracts between the federal government and private parties is governed by federal law. *C.f., Priebe & Sons, Inc. v. United States*, 332 U.S. 407, 68 S.Ct. 123 (1947).

26. To determine whether recovery for a taking is owed by SRA-T and SRA-L, this Court must assess various aspects of the FERC license – its agreement with both SRAs – to include the propriety of the spillway gate opening protocol set forth in the FERC-approved Spillway Operating Guide. Such protocol is controlled by FERC regulations and orders specific to the Toledo Bend Project that were issued in furtherance of its duties and responsibilities established by the FPA.

27. Furthermore, the adequacy of the FERC-approved Spillway Operating Guide is actually in dispute because Plaintiffs allege their property was "taken" and monetary damages are owed as a result of SRA-T and SRA-L's opening of the spillway gates, which was performed in accordance with the FERC-approved Spillway Operating Guide.

28. The FERC license issued jointly to SRA-T and SRA-L is sanctioned under the FPA, which is "a complete scheme of national regulation [promoting] the comprehensive development of the water resources of the Nation," whose goal is to administer uniform oversight of its licensees operating hydroelectric projects. *First Iowa, supra*, 328 U.S. at 180, 66 S.Ct. at 919. Accordingly, the federal issue presented in this case is a substantial

one that requires the uniformity of federal court jurisprudence in order to ensure that the FERC's congressionally-mandated purpose under the FPA is not diverted and the FERC orders for licensed projects remain consistent and uniform. *See, e.g., VA Timberline, LLC v. Appalachian Power Co.*, No. CIV.A. 4:06-CV-00026, 2006 WL 1993557, at *2 (W.D. Va. July 13, 2006) ("[t]he meaning of the FERC license is a substantial and important issue of federal law that sensibly belongs in a federal court"); and *Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minnesota, LLC*, 103 F. Supp. 3d 1000, 1025 (D. Minn. 2015), *motion to certify appeal denied*, No. 09-CV-3037 SRN/LIB, 2015 WL 3915687 (D. Minn. June 25, 2015) (court finds substantial issue presented because other courts assessing alleged FERC-regulated tariff violations "may look to the way in which this Court interpreted the Tariff provisions here, and applied those provisions to the particular facts of this case, in order to determine whether a defendant is liable for damages in a similar case").

29. The determination that federal jurisdiction exists in this case does not disturb the balance of federal and state judicial responsibilities because, pursuant to 16 USC § 825p, the FPA already establishes that federal courts, and not state courts, have jurisdiction to hear questions concerning operations of FERC-licensed projects. *See Great Lakes Gas Transmission Ltd. P'ship,* 103 F.Supp.3d at 1025.

30. Moreover, federal courts have subject matter jurisdiction over third party beneficiary claims of individuals named in agreements entered into pursuant to federal

statute. *See, e.g., Eatmon v. Bristol Steel & Iron Works, Inc.*, 769 F.2d 1503, 1517 (11th Cir. 1985) (holding that even though the right and remedy of the plaintiffs' causes of action were created by state law, their causes of action, nonetheless, arose under federal law for purposes of § 1331 because an executive order conciliation agreement was entered into pursuant to federal statute and the rights of the parties to the agreement derived essentially from a federal source); *see also Amoco Chem. Co. v. Tex. Tin Corp.*, 902 F. Supp. 730, 735 (S.D. Tex. 1995).

31.     Plaintiffs' allegations in the instant case are similarly based on an underlying agreement or license between FERC and the SRAs pursuant to the FPA.  Thus, regardless of the cause of action Plaintiffs have plead, Plaintiffs' claims invoke the federal question jurisdiction of this Court which must apply federal common law to resolve the question of whether the actions of which Plaintiffs complain were undertaken in accordance with, or even as required by, a federal grant, agreement, license or mandate.  Further, 16 U.S.C. § 825p provides that "[t]he District Courts of the United States, and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter [the FPA] or the rules, regulations, and orders thereunder."  Thus, Plaintiffs' claims automatically invoke the jurisdiction of this Court under 16 U.S.C. § 825p to the extent they claim the FERC-licensed protocol was not followed by the SRA-T.

> ***Plaintiffs' claims must be adjudicated in federal court pursuant to 28 U.S.C. § 1337.***

32. Lastly, removal is proper under 28 U.S.C. § 1337 as well because "the federal district courts shall have original jurisdiction of any action or proceeding arising under any Act of Congress regulating commerce…." *Id*. As the courts in *Simmons*, *VA Timberline*, and *Great Lakes Gas* all make abundantly clear, the FPA was enacted by Congress to regulate interstate commerce and Congress created and empowered FERC to carry out such federal regulation. Accordingly, 28 U.S.C. § 1337 provides yet another independent basis for removal of this matter. *C.f., Avco Corp. v. Aero Lodge No. 735, et al.*, 390 U.S. 55, 561, 88 S.Ct. 1235, 1238 (1968).

## **Removal**

33. As shown above, this civil action is one in which this Court has original jurisdiction pursuant to 16 U.S.C. § 825p and 28 U.S.C. § 1331. Therefore, this action may be removed pursuant to 28 U.S.C. § 1441.

34. Plaintiffs filed their Petition on April 20, 2016. Removing defendant was served with Plaintiffs' Petition on April 28, 2016. Accordingly, this Notice of Removal is being filed within 30 days from service of a copy of the Petition setting forth the claim for relief. 28 U.S.C. §1446(b).

35. Pursuant to 28 U.S.C. § 1446(d), Plaintiffs are being provided with a copy of this Notice of Removal and a copy is also being filed with the 163rd Judicial District Court of Orange County, Texas.

36. Attached hereto as Exhibit 2 is a Notice of Compliance with Local Rule CV-81, along with a copy of all process, pleadings, and orders served upon Defendant at the time of removal, pursuant to 28 U.S.C. §1446(a).

37. Consistent with the provisions of 28 U.S.C. § 1446(d), no further proceedings shall occur in this matter in the 163rd Judicial District of Orange County, Texas.

38. Pursuant to Rule 11 of the Federal Rules of Civil Procedure, undersigned counsel certifies he has read the foregoing Notice of Removal, that to the best of his knowledge, information and belief formed after reasonable inquiry, it is well-grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, and that it is not interposed for any improper purpose.

39. By filing this Notice of Removal, Defendant does not waive, and hereby reserves all defenses and objections to Plaintiffs' Petition/Complaint.

**WHEREFORE**, Sabine River Authority of Texas respectfully requests that this Court assume full jurisdiction over the cause herein as provided by law.

Respectfully submitted,

**GERMER PLLC**

By: */s/ Charles W. Goehringer, Jr.*
Lawrence L. Germer
Texas Bar No. 07824000
llgermer@germer.com
Charles W. Goehringer, Jr.
Texas Bar No. 00793817
cwgoehringer@germer.com
Kelli B. Smith
Texas Bar. No. 24008053
ksmith@germer.com
P.O. Box 4915
Beaumont, Texas   77704
(409) 654-6700 - Telephone
(409) 835-2115 - Facsimile


**LEWIS, BRISBOIS, BISGAARD & SMITH, LLC**

William Helfand
Texas Bar No. 09388250
bill.helfand@lewisbrisbois.com
24 Greenway Plaza, Suite 1400
Houston, Texas 77046
(832) 460-4606 - Telephone
(713) 759-6830 - Facsimile

**ATTORNEYS FOR DEFENDANT,
SABINE RIVER AUTHORITY OF TEXAS**

## **CERTIFICATE OF SERVICE**

  The undersigned certifies that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on May 26, 2016.

  Glen W. Morgan
  Adam Nichols
  John Werner
  Reaud, Morgan & Quin, LLP
  801 Laurel Street
  P. O. Box 26005
  Beaumont, TX 77720-6005
  *Counsel for Plaintiffs*

            */s/ Charles W. Goehringer, Jr.*
            Charles W. Goehringer, Jr.